UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x Case No.: 09-CV-497 (DLI) (VVP)
RAFAEL RIVERA, an individual, on behalf
of himself and all other similarly situated,

                                    Plaintiff,

    -against-

ESSEX PLAZA MANAGEMENT ASSOCIATES,
AND LA CABANA HOUSES ASSOCIATES

                                    Defendants
------------------------------------------------------------x

## PLAINTIFF'S PETITION FOR ATTORNEY FEES AND COSTS

Plaintiff Rafael Rivera applies for an award of fees and costs against Defendants Essex

Plaza Management Associates and La Cabana Houses Associates for attorney fees and costs set

forth in the accompanying declarations and records of Abel L. Pierre, Esq.  This court has

directed the entry of default judgment against Defendants on April 30, 2009.   The only

remaining issue is the fee and cost award.

Accordingly, Counsel submits the accompanying Memorandum in Support of Fee

Application and Declarations concerning time, costs and Plaintiff's attorneys' experience.


                            Plaintiff Rafael Rivera

                            By:     /s/ Abel L. Pierre
                                    Abel L. Pierre
                            Law Office of Abel L. Pierre, P.C
                            40 Exchange Place, Suite 2010
                            New York, New York 10005
                            Tel: (212) 766-3323
                            Fax: (212) 766-3322
                            Email: abel@apierrelaw.com

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

<u>Algie v. RCA Global Commc'ns Inc.</u>
    891 F. Supp. 875, 895 (S.D.N.Y. 1994) ......................... 12

<u>Bailey v. District of Columbia</u>
    839 F. Supp. 888, 891 (D.D.C. 1993) ......................... 11

<u>Bankston v. Illinois</u>
    60 F.3d 1249, 1255 (7th Cir.1995) ......................... 11, 14

<u>Bayless v. Irv Leopold Imports, Inc.</u>
    659 F.Supp. 942 (D. Ore. 1987) ......................... 15

<u>Benavides v. Benavides</u>
    11 Conn. App. 150 (1987) ......................... 14, 17

<u>Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan,</u>
    718 F.2d 515, 523 (2d Cir. 1983) ......................... 9

<u>Blandchard v. Bergeron</u>
    489 U.S. 87, 95 (1989) ......................... 10

<u>Blum v. Stenson</u>
    465 U.S. 886, 895 (1984) ......................... 10, 12, 14

<u>Brinker v. Giuffrida</u>
    798 F.2d 661, 668 (3d Cir. 1986) ......................... 13

<u>Eddy v. Colonial Life Ins. Co.,</u>
    59 F.3d 201, 207-08 (D.C. Cir. 1995) ......................... 17

<u>Chambless v. Masters, Mates & Pilots Pension Plan</u>
    885 F.2d 1053, 1057-60 (2d Cir. 1989) ......................... 12, 15

<u>Cho v. Koam Med. Services P.C.</u>
    524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ......................... 10

<u>Christiansburg Garment v. EEOC</u>
    434 U.S. 412, 418 (1978) ......................... 17

<u>City of Riverside v. Rivera</u>
    477 U.S. 561 (1986) ......................... 15

Cohen v. West Haven Bd. Of Police Com'rs
    638 F.2d 496, 506 (2d Cir. 1980) .................................................. 10

Copeland v. Marshall
    641 F.2d 880, 904 (D.C. Cir. 1980) ............................................... 9

De Jesus v. Banco Popular de Puerto Rico
    918 F.2d 232, 234 (1st Cir. 1990) .................................................. 9

DiFilippo v. Morizio
    759 F. 2d 231, 234, 235 (2d Cir. 1985) .................................. 10, 13, 15

Gary v. Kason Credit Corp.
    No. 95-CV-54 (D. Conn. Oct. 21, 1998) ......................................... 11

Gates v. Deukmejian
    987 F.2d 1392, 1397-98 (9th Cir. 1992) ........................................ 13

Grant v. Martinez
    973 F.2d 96, 101 (2d Cir. 1992) .............................................. 13, 15

Hensley v. Eckerhart
    461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ............... 8, 13

Henson v. Columbus Bank & Trust Co.
    770 F.2d 1566, 1575 (11th Cir. 1985) ............................................ 9

James v. Home Constr. Co.
    689 F.2d 1357, 135 (11th Cir. 1982) ............................................ 17

Johnson v. Georgia Highway Express, Inc.
    488 F.2d 714, 717-719 (5th Cir. 1974) .......................................... 13

Lunday v. City of Albany
    42 F.3d 131, 134 (2d Cir. 1994) ................................................. 15

McCann v. Coughlin
    698 F.2d 112, 129 (2d Cir. 1983) ............................................... 15

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund
    450 F.3d 91, 98 n.6 (2d Cir. 2006) ............................................. 12

McNabola v. Chicago Transit Auth.
    10 F.3d 519 (7th Cir.1993) ...................................................... 10

Merriweather v. Family Dollar Stores of Indiana, Inc.,
    103 F.3d 576, 583 (7th Cir.1996) ................................................................ 8

Missouri v. Jenkins by Agyei
    491 U.S. 274, 283 (1989) ...................................................................... 10

Newman v. Piggie Park Enterprises., Inc.,
    390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) ..................... 16, 17

Pennsylvania v. Delaware Valley Citizens' for Clean Air
    478 U.S. 546, 656 (1986) ...................................................................... 10

People Who Care v. Rockford Bd. Of Educ.
    90 F.3d 1310, 1312 (7th Cir.1996) ........................................................ 10

Polk v. N.Y. State Dep't of Corr. Servs.
    722 F.2d 23, 25 (2d Cir. 1983) .............................................................. 10

Quaratino v. Tiffany & Co.
    166 F.3d 422, 426 (2d Cir. 1999) .......................................................... 16

Smith v. Chapman
    436 F. Supp. 58, 66 (W.D. Tex. 1977) .................................................. 15, 16

Strange v. Monogram Credit Card Bank of Ga.
    129 F.3d 943, 945 (7th Cir.1997) .......................................................... 11

United States Football League v. National Football League
    887 F.2d 408, 413-15 (2d Cir. 1989) ..................................................... 13, 15

**Books and Articles**

Bartell, Taxation of Costs and Awards of Expenses in Federal Court,
    101 F.R.D. 553, 560-62 (1984) .............................................................. 13

Posner, Economic Analysis of Law,
    534, 567 (4th ed. 1992) ........................................................................ 14

**Statutes**

29 U.S.C. § 201 *et seq* .............................................................................. 7

29 U.S.C. § 216(b) ..................................................................................... 8, 6

28 U.S.C. § 1987 ........................................................................................ 10

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x Case No.: 09-CV-497 (DLI) (VVP)
RAFAEL RIVERA, an individual, on behalf
of himself and all other similarly situated,

                              Plaintiff,

    -against-

ESSEX PLAZA MANAGEMENT ASSOCIATES,
AND LA CABANA HOUSES ASSOCIATES

                              Defendants
------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEY FEES AND COSTS


Dated: New York, New York
       February 23, 2010

                                   Respectfully Submitted,

                                   Abel L. Pierre, Esq.
                                   Law Office of Abel L. Pierre, P.C
                                   40 Exchange Place, Suite 2010
                                   New York, New York 10005
                                   Tel: (212) 766-3323

## I.   INTRODUCTION

Plaintiff applies for an award of costs and fees against Defendants following entry of default judgment in his favor. Plaintiff's attorney has litigated this case for more than one year from the filing and serving of a summons and complaint, motion for default judgment, memoranda of law through a conference with the Honorable Judge Pohorelsky.

As set forth in the accompanying Declaration of Abel L. Pierre, Esq. during the year this case has been pending, Defendants Essex Plaza Management Associates and La Cabana Houses Associates have failed to appear in this action and have failed to submit any opposition to all documents they were served with and duly filed with this Court.

## II.   HISTORY

Plaintiff Rafael Rivera is a resident of the State of New York, County of Kings. The Defendants own and operate the apartment complex located at 391 Lorimer Street, Brooklyn, New York 11206. Plaintiff has been employed by Defendants as a building superintendent at this location from approximately 2003 to date (hereinafter "Covered Period").

Throughout the Covered Period, as a consideration for employment, Defendants paid Plaintiff's wages, lodging with utility services, health insurance and other forms of remuneration. Plaintiff often worked varying amounts of overtime hours beyond a forty hour work week. Although Defendants purport to pay Plaintiff overtime compensation of one and one-half (1.5) times his hourly rate of pay for hours he worked beyond a forty hour week, the overtime compensation did not include all remuneration for employment as required by the Fair Labor Standards Act (hereinafter "FSLA").

Under the FLSA, Plaintiff is entitled to overtime premium compensation which includes all remuneration for employment, whether in the form of wages or some other form, and whether

6

paid directly to Plaintiff or to a third party. By failing to do so, Defendants have violated the FLSA.

Consequently, Plaintiff is entitled to recover his unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and the costs of the action.

During the covered period, defendants employed other employees in the same job title as Plaintiff. Defendants subjected these other employees to the same pay policies outlined above. Those other employees similarly situated to Plaintiff are entitled to the same relief that Plaintiff seeks under the FLSA and related state claims.

Plaintiff commenced this action on February 6, 2009 and completed service on all Defendants on February 18, 2009. Defendants have failed to answer or otherwise appear in this action. On April 30, 2009, Plaintiff filed a motion for default judgment, to which the clerk of the court made an entry of default against Defendants.

On May 1, 2009, Judge Irizarry ordered that Plaintiff's motion for default judgment be referred to Judge Pohorelsky. Judge Pohorelsky then issued a scheduling order dated May 4, 2009 for service and filing papers relating to Plaintiff's motion. Defendants were duly served with a copy of Judge Pohorelsky's order.

To date, there has been neither answer nor appearance by Defendants in this matter.

## III.    FEE-SHIFTING UNDER THE FLSA

The Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* applies to employees engaged in interstate commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce and its gross annual business volume is a minimum of $500,000, unless the employer can claim an exemption from coverage. The FLSA established a national minimum

wage, guaranteed *time and a half* for overtime in certain jobs, and prohibited most employment of minors in "oppressive child labor," a term defined in the statute.

The FLSA mandates that courts award a "reasonable attorney's fee" to prevailing plaintiffs. ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant...."). [1] The fees and costs are paid by the defendant in addition to any damages that are owed, such as back pay for unpaid wages and liquidated damages. While the award of fees is mandatory, the district judge has "wide latitude" in determining the amount of the fee. [2] Therefore, this court reviews a district court's award of attorney's fees under the FLSA for abuse of discretion. [3] Because determining attorney's fees involves factual issues, this review is "highly deferential." [4] The district judge is in the best position to determine the worth of attorneys practicing before him. Moreover, employing a highly deferential standard of review avoids an extensive second round of litigation over attorney's fees. [5]

Generally, when calculating attorney's fees, a court will determine a "lodestar amount by multiplying the reasonable number of hours worked by the market rate." [6] The "lodestar" method is the generally recognized method used by courts to determine reasonable attorneys' fees in cases brought under fee-shifting statutes such as the FLSA. Under this method, the court multiplies the number of hours reasonably expended in the litigation by a reasonable hourly rate. The attorneys for the plaintiffs must document the number of hours spent on the case, provide a

---

[1] 29 U.S.C. § 216(b)

[2] *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 945 (7th Cir.1997).

[3] *Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir.1995).

[4] *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 583 (7th Cir.1996).

[5] *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

[6] *Bankston*, 60 F.3d at 1255

description of the work performed, and establish that the number of hours expended were reasonable. Plaintiffs' attorneys are also required to establish the reasonableness of their claimed hourly rate. In determining a reasonable hourly rate, the court relies on the prevailing market rate for attorneys who provide similar legal services in the community where the case is pending.

## IV.    FEE AWARD SOUGHT

Plaintiff applies for the fees and costs set forth in the accompanying declarations.  In awarding fees, the Court can consider the substantial effort of Plaintiff's attorney caused by defense "counsel who fought the case bitterly to the very end and even now continue their recalcitrant posture."[7] "While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended."[8]

## V.    FLSA FEE STANDARDS

Where, as here, an attorney fees provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances."[9] An award of fees is mandatory in FLSA cases. "[t]he court ...shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[10]

---

[7] *Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan,*718 F.2d 515, 523 (2d Cir. 1983).

[8] *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985).  To the same effect: *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) (Title VII); contentious litigation strategy forced plaintiff to respond to kind);

[9] *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending).

[10] 29 U.S.C. 216(b).

## VI.    THE $300 HOURLY RATE IS REASONABLE

The reasonable rates used to determine the amount of attorney fees to award are based in part upon the prevailing market rates for similar services in the district in which the awarding court sits.[11]    The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question."[12]  Evidence of an attorney's market rate includes evidence of rates other attorneys in the area charge paying clients for similar work, and evidence of fee awards the attorney has received in similar cases.[13] This rate of $300 per hour is a reasonable rate for FLSA cases in the Eastern District of New York.  "[H]ourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants."[14]

## VII.    LODESTAR FIGURE

There is a strong presumption that the lodestar figure (reasonable hours times reasonable rate) represents a reasonable fee.[15] Currently prevailing marketplace rates establish the lodestar amount.[16] "The district court may not reduce the established market rate by some factor that it

---

[11] *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983); *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

[12] *McNabola v. Chicago Transit Auth.*, 10 F.3d 519 (7th Cir.1993).

[13] *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1310, 1312 (7th Cir.1996).

[14] *Cho v. Koam Med. Services P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (collecting cases and awarding fees in a FLSA and New York Labor Law case based on $250 hourly rate for a partner.).

[15] *Blandchard v. Bergeron*, 489 U.S. 87, 95(1989), quoting *Pennsylvania v. Delaware Valley Citizens' for Clean Air*, 478 U.S. 546, 656 (1986).

[16] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989); *Blum, 465 U.S.* at 895; *DiFilippo v. Morizio*, 759 F. 2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); *Cohen v. West Haven Bd. Of Police Com'rs*, 638 F.2d 496, 506 (2d Cir. 1980).

believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate.[17]

---

[17] *Bankston*, 60 F.3d at 1249, 1255; *Bailey v District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, No. 95-CV-54 (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).

We want to caution, however, that district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large or medium-sized law firms, based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs. See, e.g., *Chambless*, 885 F2.d at 1058-59; *Algie v. RCA Global Commc'ns Inc.*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994). But whether or not the aforementioned premise – that the bigger the firm the higher the attorney's hourly rates charged – is correct, and even assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate. Cf. *Miele, 831 F. 2d at 409; Blum, 465* U.S. at 892, 895-96 (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard"). Rather, overhead merely helps account for why some attorneys charge more for their services. **Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise, and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm.** The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Blum,* 465 U.S. at 895 n.11; *Chambless*, 885 F.2d at 1058-59. Working as a solo practitioner may be relevant to defining the market, See *Chambless*, 855 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate"), but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.[18]

---

[18] *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91, 98 n.6 (2d Cir. 2006) (emphasis is added)

While the Court has discretion to determine the proper fee amount, "[The latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate."[19]  "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified."[20]

## VIII.  NO ADJUSTMENT SHOULD BE MADE

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate.[21] Plaintiff does not request an upward or downward adjustment, despite the arguable application of 28 U.S.C. § 1987. If defendant requests such an adjustment, factors identified in the Fifth Circuit case of *Johnson v. Georgia Highway Express, Inc.*,[22] may be considered. The United States Supreme Court case of *Hensley v. Eckerhart*,[23] however, makes clear that *Johnson* factors matter only as they bear on the market rate of hours reasonably expended, or, in rare cases, if they are a basis for adjusting the lodestar.[24]

---

[19] *DiFilippo*, 759 F.2d at 234.

[20] *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992). *See* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984).

[21] *E.g.*, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

[22] 488 F.2d 714, 717-719 (5th Cir. 1974).

[23] 461 U.S. 424 (1983).

[24] *Id.* at 434 n.9 ("[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); *U.S. Football League*, 887 F.2d at 415.

1. **The time and labor required** (see accompanying declarations in support.) Plaintiff submits that although the monetary recovery in FLSA cases is frequently small, these cases help others because employers are encouraged to change their procedures as a result. Defendants should not discourage from expending resources beyond the value of the cases in the hope of reducing plaintiff's fee award.

2. **The preclusion of other employment.** The time spent on this case was not, and could not be, spent at the same time on other cases.

3. **The customary fee.** As set forth above and in the accompanying declarations, Plaintiff is requesting the customary fee for similar work in the community.

4. **Whether the fee is fixed or contingent.** In a FSLA case, the fee is always contingent – not on the amount of damages, but on award by the court or agreement of opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery.

"A contingent fee must be higher than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan."[25] If contingent, the fee award should compensate counsel for the risk of receiving no compensation,[26] and to permit counsel "to earn an income that would be competitive with colleagues who get

---

[25] Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992).

[26] *Blum*, 465 U.S. at 903.

14

paid win or lose."[27]

    5. **Time limitations imposed by the client of the circumstances.** None apply except reasonableness.

    6. **The amount involved and the results obtained.** "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases."[28] The Second Circuit rejects the "proportionality" argument as the basis for a fee award.[29] Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recover.[30]

    7. **The experience, reputation and ability of the attorney.** As set forth in the accompanying declaration in support, the Plaintiff's attorney has an outstanding reputation educationally and professionally.

    8. **The undesirability of the case.** FSLA cases are brought in the public interest by private attorneys, but are particularly undesirable to lawyers for many reasons. They are often labor-intensive to obtain the requisite proof to win the case. The results are uncertain so taking such cases imposes risks upon the practitioner. It becomes difficult for employees to vindicate their rights under FSLA statutes as a result, especially where small amounts of money are involved. Compensation is both contingent upon success and deferred until after the end of the case – when (and if) it is collected from the defendant. For these reasons, FLSA plaintiffs' cases

---

[27] *Bayless v. Irv Leopold Imports, Inc.,* 659 F.Supp. 942 (D. Ore. 1987) (odometer case).

[28] *Smith v. Chapman,* 436 F. Supp. 58, 66 (W.D. Tex. 1977).

[29] *E.g., Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994); *DiFilippo,* 759 F.2d at 234; *McCann v. Coughlin,* 698 F.2d 112, 129 (2d Cir. 1983)

[30] *E.g.,City of Riverisde,* 477 U.S. at 580 (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); *United States Football League v. National Football League,* 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension)

are not, for the most part, attractive cases to most practitioners. The vast majority of attorneys simply will not take these cases.

9. **The nature and length of the professional relationship with the client.** Often, where an attorney has a lengthy and repeated professional relationship with a client, the client negotiates a "volume discount" for legal services. Not so here. In FSLA cases, the plaintiffs are typically not a "repeat" or "volume" client.

10. **Awards in similar cases.** See discussion above and the accompanying Declaration in Support of Abel L. Pierre, Esq. for the current market rate in the Eastern District of New York.


## IX. PURPOSE OF FEE AWARD.

Congress enacted fee-shifting statutes to compensate "private attorneys general" and thereby to encourage private enforcement of civil rights statutes, to the benefit f the public as a whole. See H.R. Rep. No. 94-1558, at 2 (1976) (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968) (per curiam)); see generally S. Rep. No. 94-1011 (1976). The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it s perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, see generally S. Rep. No. 94-1011, not only to those whose cases make new law.[31]

Attorney fees are central to the enforcement of the FSLA by private attorneys. Such fees are particularly important in FSLA cases, including overtime and upaid wages cases. Therefore, "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases."[32]

---

[31] *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 (2d Cir. 1999).

[32] *Smith,* 436 F. Supp. at 58, 66.

A defendant should not be encouraged to litigate in the expectation that the Court will reduce the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court.[33]

An inadequate award diminishes the inducement created by fee-shifting statutes, and undermines the goal of promoting private representation in FLSA actions. An award should be made at a rate that recognizes the vindication of policy expressed in the FLSA. "The award of attorney's fees, as a practical matter, is a critical and integral part of [the creation of a system of private attorneys general].[34]

## X.    CONCLUSION

The Court has already ruled that Defendant violated federal law. Plaintiff, as a "private attorney general," is the "the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" [35] This litigation accomplished the purposes of the FLSA. Attorney fees encourage employers to comply with the FLSA, as well as inducing clients with the financial ability to bring FLSA suits. Plaintiff submits that the fee application is reasonable in time expended and amount requested. He respectfully submits that it should be awarded as requested. Plaintiff does not request oral argument or hearings in connection with this petition.

---

[33] *Cf. Eddy v. Colonial Life Ins. Co.,* 59 F.3d 201, 207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law and encourages settlement); *Benavides v. Benavides,* 11 Conn. App. 150 (1987) (same).

[34] *James v. Home Constr. Co.,* 689 F.2d 1357, 135 (11th Cir. 1982).
[35] *Christiansburg Garment v. EEOC,* 434 U.S. 412, 418 (1978), quoting *Newman v. Piggie Bank Park Enterprises Inc.,* 390 U.S. 400, 402 (1968).

THE PLAINTIFF

By:    /s/ Abel L. Pierre

Abel L. Pierre, Esq.
Law Office of Abel L. Pierre, P.C
40 Exchange Place, Suite 2010
New York, New York 10005
Tel: (212) 766-3323
Fax: (212) 766-3322
Email: abel@apierrelaw.com

# EXHIBIT A

LAW OFFICE OF ABEL L. PIERRE, ATTORNEY AT LAW, P.C.
40 Exchange Place, Suite 2010, New York, NY 10005
Tel: (212) 766-3323
Fax: (212) 766-3322

# CLIENT BILLABLE TIMESHEET

**CLIENT NAME**
 Rafael Rivera

**ADDRESS**


**TELEPHONE NUMBER**
 (***) ***-****

**DATE OF INTAKE**
 November 14, 2008

**CASE INFORMATION**
 Rivera vs. Essex Management Plaza Associates and La Cabana Houses Associates
 2/6/2009
 EDNY

| DATE | WORK COMPLETED | BILLABLE HOURS | EXPENSES INCURRED |
|------|----------------|----------------|-------------------|
| 11/14/2008 | Client Intake | 2.5 | $8.25 for photocopies of client's documents |
| 12/12/2008 | Attorney conducted research | 2.75 | $5.25 for photocopies |
| 1/13/2009 | Attorney conducted additional research | 1.5 | $2.75 photocopies |
| 1/15/2009 | Consulted and advised client of FSLA law and discussed Defendants possible defense | 1.5 | |
| 1/16/2009 | Reviewed client's documents and pay statements in preparation for drafting summons and complaint | 2.5 | |
| 1/21/2009 | Commenced drafting of the complaint | 1.5 | |
| 1/30/2009 | Completed drafting the complaint | 1.5 | |
| 2/5/2009 | Reviewed complaint before filing | 1.0 | |
| 2/5/2009 | | 0.75 | $7.20 for print job |

|  | Prepared summons and coversheet in this matter; Printed 4 copies each of summons, complaint and coversheet |  |  |
| --- | --- | --- | --- |
| 2/6/2009 | Filed coversheet, summons and complaint with court | 1.0 | $350 filing fee/$4 travel fee |
| 2/9/2009 | Delivered summons and complaint to process server | 0.67 | $4 travel fee |
| 2/18/2009 | Service completed on Defendants |  | $215 process service fee |
| 4/8/2009 | Drafted Letters to Defendants advising them of Judge's order dated 4/7/09 | 0.25 |  |
| 4/8/2009 | Served Judge Irizarry's Order dated 4/7/09 upon Defendants | 0.67 | $0.88 postage fee |
| 4/15/2009 | Drafted and ECF letter requesting pre motion conference to Judge Irizarry | 0.75 |  |
| 4/16/2009 | Served Judge Irizarry's Order dated 4/16/09 upon Defendants | 0.5 | $0.88 postage fee |
| 4/17/2009 | ECF affidavits of service for orders dated 4/7/09 and 4/16/09 | 0.20 |  |
| 4/29/2009 | Drafted Notice of Motion for Default Judgment | 1.0 | $8.55 for copies |
| 4/30/2009 | Served Notice of Motion on Defendants | 0.42 | $8.00 postage fee |
| 5/6/2009 | Served Judge Pohorelsky's order dated 5/4/09 | 0.5 | $11.08 postage fee |
| 5/6/2009 | ECF affidavits of service for order dated 5/4/09 | 0.2 |  |
| 5/14/2009 |  | 1.8 | $2.50 photocopies |

| | | | |
|---|---|---|---|
| | Conducted research in anticipation of drafting Memorandum of Law in support of Motion for Default Judgment | | |
| 5/28/2009 | Drafted Plaintiff's Memorandum of Law in Support of Motion for Default Judgment | 2.5 | |
| 5/29/2009 | Served Plaintiff's Memorandum of Law on Defendants | 0.45 | $3.00 photocopies/ $4.56 postage fee |
| 5/29/2009 | ECF Affidavits of service | 0.2 | |
| 9/11/2009 | Drafted and ECF letter to Judge Pohorelsky | 0.5 | |
| 12/2/2009 | Drafted and ECF letter to Judge Pohorelsky | 0.5 | |
| 1/8/2010 | Drafted Letters and mailed to Defendants advising them of Status conference of 1/13/09 | 0.5 | $0.88 postage fee |
| 1/13/2010 | Attended status conference before Judge Pohorelsky | 0.5 | |

**TOTAL BILLABLE HOURS** 28.61

**EXPENSES INCURRED** 636.78