UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RAFAEL RIVERA,

                              Plaintiff,          **REPORT AND**
                                                  **RECOMMENDATION**

             - v -
                                                  CV 09-497 (DLI)(VVP)
ESSEX PLAZA MANAGEMENT
ASSOCIATES, and LA CABANA
HOUSES ASSOCIATES,

                              Defendants.
--------------------------------------------------------x

POHORELSKY, Magistrate Judge:

        This matter was referred by the Honorable Dora L. Irizarry to the undersigned for a

report and recommendation as to whether default judgment is appropriate, and if so, as to

the proper relief to be awarded.  The plaintiff, Rafael Rivera, brought this action against the

defendants Essex Plaza Management Associates (hereafter "Essex") and La Cabana Houses

Associates (hereafter "La Cabana") for unpaid overtime wages he is owed under the Fair

Labor Standards Act (hereafter "FLSA" or "the Act"), 29 U.S.C. §§ 201 *et seq.*, the New York

Labor Law (hereafter "the NYLL"), § 191 *et seq.*, and under a collective bargaining

agreement.  *See* Amended Complaint [DE 21] ¶¶ 34-53.[1]  The plaintiff has submitted a

memorandum of law on damages as well as affidavits and documentary evidence, in lieu of

an evidentiary hearing.  On the basis of the plaintiff's submissions and the prior proceedings

in this action, the court makes the following recommendations regarding liability and

damages.

_____

        [1]"DE" refers to the docket entry number where the document cited may be found.

## I.    LIABILITY

This suit was originally filed by Rivera on February 6, 2009.  Later that month, both defendants were properly served with copies of a summons and complaint.  *See* Docket Nos. 2, 3.  The defendants did not file an answer or respond to the complaint, or otherwise appear in connection with this matter.  *See* Affirmation of Abel L. Pierre in Support of Motion for Default Judgment, Apr. 29, 2009 [DE 9] (hereafter "Pierre Aff.") ¶¶ 6-9.  Accordingly, the plaintiff moved for a default judgment and on April 30, 2009, the clerk of court entered a default under Federal Rule of Civil Procedure 55(a) against Essex and La Cabana.  *See* Clerk's Entry of Default, Apr. 30, 2009 [DE 10].  Following a referral of the default judgment motion to me, the plaintiff's counsel was advised at a conference that the allegations of the original complaint were insufficient to establish liability.  Accordingly, the motion for a default judgment was denied, but the plaintiff was afforded the opportunity to file and serve an amended complaint to cure the deficiencies.

The plaintiff took advantage of the opportunity, by filing and serving an amended complaint on February 26, 2010, to which the defendants never responded.  The plaintiff then filed the present motion for a default judgment.  *See* Second Motion for Entry of Default, Oct. 22, 2010 [DE 25].  The clerk entered the default of the defendants on June 14, 2011, and the matter was promptly referred to me.

As a consequence of the defendant's default, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of damages.  *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v.*

*Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Even so, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  *Leider v. Ralfe*, No. 01-CV-3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).  Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.  *See Au Bon Pain*, 653 F.2d at 65.

The well-pleaded allegations in the Amended Complaint establish the following facts. The defendants Essex and La Cabana own and operate real estate in Brooklyn, an apartment complex located at 391 Lorimer Street in the Williamsburg section.  *See* Amended Complaint ¶¶ 10-13.  Beginning in 2003 through 2009, Rivera was employed full-time by the defendants as a building superintendent, though the complaint does not specify his duties or responsibilities.  *Id.* ¶¶ 15, 20-22.  In addition to his regular monetary compensation, Rivera lived in an apartment in the building; he was provided with lodging and with the costs of the utilities in that apartment.  *Id.* ¶ 26.  The provision of his apartment was consideration for his employment.  *Id.*  Rivera was scheduled by the defendants to work five eight-hour shifts every week, but frequently would work more than forty hours per week.  *Id.* ¶¶ 24-25.  In such circumstances, he would receive overtime pay.

For straight-time wages, Rivera received $20.00 per hour, but his wages from week to week would depend on the number of hours assigned to him by Essex and La Cabana.  *Id.* ¶

-3-

27; Affidavit of Rafael Rivera, Feb. 26, 2010 [DE 22] ("Rivera Aff.") ¶ 12.  For the overtime hours he worked, the defendants compensated Rivera at a rate of one and one-half times his regular hourly rate.  *See* Amended Complaint ¶ 28.[2]  However, when his overtime rate was calculated, it only took into account his hourly wage rate and did not include the value of the apartment and utilities with which he was also provided as part of his regular compensation. *Id.*  ¶ 29.  Rivera contends that this deprived him of the full extent of the overtime wages to which he was entitled, that his overtime rate should reflect the other forms of remuneration (lodging and utilities) he regularly received, and that this overtime practice violates both the FLSA and the NYLL, and breaches the collective bargaining  agreement regulating his employment.

Both the FLSA and the NYLL provide for the recovery of unpaid overtime wages.

The FLSA[3] states, *inter alia*:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce, or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [the employee] is employed.[4]

---

[2]In his affidavit, Rivera asserts that he was paid $30.75 per hour for overtime hours, which is slightly more than one and one-half times his regular hourly wage of $20 per hour.  Rivera Aff. ¶ 12.

[3]Although the plaintiff asserts identical claims under the FLSA, the NYLL, and through a breach of contract theory, for reasons expressed *infra*, the court focuses on the FLSA, a practice which the plaintiff appears to have adopted in his memorandum of law on damages.

[4]New York law similarly provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]"  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also* N.Y. Lab. Law §§ 160, 191(1-d).

29 U.S.C. § 207(a)(1). While the Act exempts many trades and industries from these overtime requirements or alters the requirements for those industries, Rivera's employment as a building superintendent does not appear to fall within any of these exemptions. *See* 29 U.S.C. § 207.

As a threshold matter, the FLSA's overtime provisions apply to two classes of employees, those "engaged in commerce, or in the production of goods for commerce" and those who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "Commerce" is specifically defined under the FLSA to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An "enterprise engaged in commerce or in the production of goods for commerce" is one that " has employees engaged in commerce or in the production of goods for commerce, or that *has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person*" and whose annual gross volume of sales or business equals or exceeds $500,000.00. 29 U.S.C. § 203(s)(1)(A)(i)-(ii) (emphasis added).

Rivera is neither engaged in commerce, as that term is defined by the FLSA, nor in the production of goods for commerce, despite the contrary legal assertions offered by the complaint. *See* 29 U.S.C. § 203(b). Nor is he employed by an enterprise engaged in the production of goods for commerce. Accordingly, the only way in which he satisfies all the elements of this cause of action is if he is employed by an enterprise engaged in commerce.[5]

_____

[5]While Congress may have drafted the "commerce" language to ensure that the resulting legislation contained a constitutional nexus and that there was a sound basis for jurisdiction in the

The complaint ultimately establishes this commerce element by alleging that "[i]n performing his duties for Defendants, Plaintiff used goods and products that had been moved or produced in interstate commerce." *See* Amended Complaint ¶ 17. It also alleges that the Defendants are "enterprises engaged in commerce within the meaning of the FLSA [and] have used goods and products that have been moved or produced in interstate commerce."[6] *Id.* ¶¶ 18-19. While this level of factual specificity leaves the court underwhelmed with respect to the FLSA's "commerce" element, it is sufficient.

First, because Rivera, as the defendant's employee, handled or used goods and products that had moved in or been sold in interstate commerce, the defendants are an enterprise engaged in commerce. 29 U.S.C. § 203(s)(1)(A)(i); *Rosso v. PI Management Associates, LLC*, No. 02-CV-1702, 2005 WL 3535060, at *7-8 (S.D.N.Y. 2005); Complaint ¶¶ 15-17. Other courts have found for the same reasons that apartment complexes were enterprises engaged in commerce for FLSA purposes. *See, e.g., Radulescu v. Moldowan*, 845 F. Supp. 1260, 1262-64 (N.D. Ill. 1994) (examining the legislative history to find congressional intent to "extend the coverage of the FLSA to companies that use products that have moved in interstate commerce"); *Marshall v. Baker*, 500 F. Supp. 145, 151 (N.D.N.Y. 1980) (concluding

federal courts, at this stage the court's inquiry focuses on the plaintiff's ability to prove all the elements of the cause of action he asserts rather than the broader jurisdictional concerns. *See, e.g., Padilla v. Manlapez*, 643 F. Supp. 2d 298, 301-02 (E.D.N.Y. 2009); *Velez v. Vallasso*, 203 F. Supp. 2d 312, 330-32 (S.D.N.Y. 2003).

[6]These statements approach the outer boundaries of what can be considered factual assertions accepted as true after a default, as opposed to legal conclusions, which the court does *not* accept as true after a default. *See In re Indus. Diamonds*, 119 F. Supp. 2d at 420; *see also See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (discussing and setting forth the Court's modern pleading standards with respect to conclusory legal assertions); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same).

that "apartment complex is covered [under FLSA] because the materials used by its maintenance personnel moved in interstate commerce"); *Brennan v. Jaffey*, 380 F. Supp. 373 (D. Del. 1974).  Secondly, the complaint establishes that the defendants' yearly gross volume of business (gross rentals) exceeds the FLSA's $500,000 floor.  *See* Amended Complaint ¶¶ 7-8, 29 U.S.C. § 203(s)(1)(A)(ii); *Brock v. Hamad*, 867 F.2d 804, 809 (4th Cir. 2009).  Because both prongs are met, the factual assertions in the complaint establishes that the Essex and La Cabana were enterprises engaged in commerce for FLSA purposes.  *See Marshall*, 500 F. Supp. 2d at 148-51 (enterprise engaged in commerce "include[s] a local business whose employees use materials which at some point moved in interstate commerce"); *Dunlop v. Industrial American Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975) (finding that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA."); *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998).

The relevant issue then, as far as this case is concerned, is whether the value of the lodging and utilities is properly includable in Rivera's "regular rate" of pay, since the overtime rate is based on the "regular rate" of pay.  The section governing overtime broadly defines "regular rate" to include "all remuneration paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).  It goes on to exclude from the regular rate various forms of compensation that are not implicated by the facts alleged.  *See* 29 U.S.C. § 207(e)(1)-(8). Elsewhere, the FLSA similarly defines "wage" to include "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such

employer to his employees." 29 U.S.C. § 203(m).  Issues surrounding the costs of furnishing

lodging to employees are usually asserted by the defendant-employer as a *credit* allowing him

to meet his statutorily-imposed minimum wage obligations by including the costs of lodging

as part of the wage paid to the employee, or by deducting from the wages owed the costs of

lodging.[7]  *See, e.g.*, *Castellanos-Contreras v. Decatur Hotels, LLC*, 576 F.3d 274, 279-89 (5th Cir.

2009) (quoting *Donovan v. Miller Props., Inc.*, 711 F.2d  49, 50 (5th Cir. 1983)); *Brock v. Carrion,

Ltd.*, 332 F. Supp. 2d 1320, 1324-25 (E.D. Cal. 2004).  But while the applicable provisions

are more frequently used as a shield, nothing appears to prohibit a plaintiff-employee from

using them affirmatively as a sword in arguing his entitlement to greater overtime pay.

Indeed, the case law, while not extensive, not only sanctions such a result, but seems

to call for it, at least implicitly.  "[I]t seems clear that the cost of board and lodging

customarily furnished employees must also be included in the *regular rate*, particularly as

Section 3(m) of the Act specifically provides that 'wages' include the reasonable cost of such

board and lodging."  *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945)

(emphasis supplied); *see also Estanislau v. Manchester Developers, LLC*, 316 F. Supp. 2d 104, 108

(D. Conn. 2004) (finding it clear that employer's credit for lodging plaintiff-employee "must

be considered as part of Plaintiff's wage"); *Moon v. Kwon*, 248 F. Supp. 2d 201, 233 (S.D.N.Y.

2002).  In addition, the Code of Federal Regulations states, "Where board, lodging, or other

---

[7]In addition, the Code of Federal Regulations states that "in determining whether [the employer] has met the minimum wage and overtime requirements of the Act, the employer may credit himself with the reasonable cost to himself of board, lodging, or other facilities customarily furnished by him to his employees when the cost of such board, lodging, or other facilities is not excluded from wages paid to such employees under the term of a bona fide collective bargaining agreement applicable to the employees."  29 C.F.R. § 531.27(b).

facilities are customarily furnished as addition to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay." 29 C.F.R. § 531.37(b).  In somewhat similar circumstances, courts have found that "if Plaintiff is paid on a weekly basis, his weekly wage is what he receives in his check, plus the reasonable value of his lodgings for that week.  Thus, time and a half overtime pay under the Act would be calculated on the basis of that *combined* sum."  *Estanislau*, 316 F. Supp. 2d at 108 (emphasis supplied) (citing *Moon*, 248 F. Supp. 2d at 233 (determining plaintiff's weekly regular salary to include value of meals and lodging benefits as well as value of cash and checks regularly received)).

Under these circumstances, and since the defendants have defaulted and thus have made no argument to the contrary, there are sufficient grounds to include the value of Rivera's lodging and utilities in his "regular rate" for purposes of determining his proper overtime wage.[8]  Accordingly, his overtime rate should have taken into account and reflected the compensation he received in the form of lodging and utilities.  *See* 29 U.S.C. § 207(e); *Walling*, 152 F.2d at 815; *Estanislau*, 316 F. Supp. 2d at 108; 29 C.F.R. § 531.37(b).  Because the defendants' practice of failing to pay Rivera the required overtime rate was not in accordance with the legal principles above, the facts as alleged establish that Essex and La

---

[8]More extensive factual allegations on the lodging or compensation agreement between Rivera and the defendants would have been helpful to allow the court to fully ascertain the nature of that agreement for FLSA wage purposes.  At a minimum, however, the complaint establishes that Rivera received the lodging accommodations as consideration for his employment, which is sufficient for purposes of this default judgment.

Cabana violated the FLSA and NYLL.  There being a valid basis on which to assert liability, the court proceeds to determine the amount of damages to be awarded.

## II.    DAMAGES

Federal Rule of Civil Procedure 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment.  *See Securities & Exch. Comm'n v. Management Dyn., Inc.,* 515 F.2d 801, 814 (2d Cir. 1975).  Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages sought and awarded.  *See Greyhound*, 973 F.2d at 158; *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997). Having provided notice to the defaulting defendants, the court is permitted to consider affidavits on the appropriate amount of damages to be awarded.  *See, e.g., Transatlantic Marine,* 109 F.3d at 111 ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). The court has received and considered the plaintiff's affidavit and other submissions in the record, while the defendants have not made any submissions to rebut or negate the plaintiffs' assertions.

### A.    UNPAID WAGES

In his Affirmation in Support of Motion for Default Judgment, the plaintiff seeks recovery of unpaid overtime compensation for two years, presumably because the statute of

limitations for recovery under the FLSA extends for two years absent a showing of wilfulness.[9]  *See* 29 U.S.C. § 255(a).  As there is no showing of wilfulness – indeed the defendants paid overtime wages but simply did not include in the calculation of those wages the value of the apartment and utilities provided to the plaintiff – a two-year period for recovery under the FLSA is appropriate.[10]

      1.  <u>Statutory Provisions</u>

Although the FLSA and the NYLL both provide damages for unpaid wages, courts have not provided separate awards for unpaid wages under both statutes because to do so would provide a double recovery.  *See, e.g.*, *Yu G. Ke v. Saigon Grill, Inc.*,  595 F. Supp. 2d 240, 262 n.44 (S.D.N.Y. 2008); *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998).  The recovery available under the two statutes is not always identical, however, and the court will rest its recommendation concerning damages on the statute that provides the higher award.  Both the FLSA and the NYLL provide for the full recovery of unpaid overtime wages, unlike for example straight-time wages.[11]  Thus, the determination as to which statute should provide the basis for recovery of unpaid overtime wages depends on the calculation of liquidated damages, which are assessed differently under the FLSA and the NYLL.

---

[9]The Affirmation is annexed to the Notice of Motion, Oct. 22, 2010 [DE 25.]

[10]The statute of limitations under the NYLL with respect to unpaid wages extends for six years.  *See* N.Y. Lab. Law § 198(3).  Although the plaintiff's employment commenced in 2003, he has not sought recovery under the NYLL for the full six-year period prior to the filing of the action, and the court is loathe to award damages that the plaintiff has not requested or sought to prove.

[11]With respect to straight-time wages, the FLSA only provides for recovery of unpaid *minimum* wages, while the NYLL provides for recovery of *all* unpaid wages, even if the employee is entitled, by contract or otherwise, to a wage in excess of the statutorily prescribed minimum.  *Compare* 29 U.S.C. § 206(a) *with* N.Y. Labor Law § 191.

In addition to any unpaid minimum or overtime wages recovered, the FLSA awards "an additional equal amount as liquidated damages" – in essence, double damages.  29 U.S.C. § 216(b).  Liquidated damages are available under the FLSA unless the employer demonstrates that its failure to pay the wages owed resulted from its good faith and a reasonable belief that it was not violating the FLSA.  19 U.S.C. § 260; *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 70-71 (2d Cir. 1997).  In spite of this caveat, FLSA liquidated damages are considered "compensatory rather than punitive in nature."  *Id.* at 71.  They are intended to compensate the plaintiffs for the delay in obtaining what they are owed, "serv[ing] as a form of pre-judgment interest, and for that reason a plaintiff who prevails on his FLSA claim and receives liquidated damages may not also receive an award of interest." *Saigon Grill*, 595 F. Supp. 2d at 261-62; *see also Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).  In contrast, NYLL liquidated damages, which were fixed at 25% of the wages owed at the time this action was initiated,[12] serve a punitive purpose, and are only awarded if the underlying violation was willful.  N.Y. Labor Law § 198(1-a); *Moon*, 248 F. Supp. 2d at 235 (citing cases).  Also unlike FLSA liquidated damages, NYLL liquidated damages do not preclude an award of pre-judgment interest.

Although plaintiffs may be statutorily eligible to receive liquidated damages under both the FLSA and the NYLL, most courts have not awarded such a double recovery under both statutes, just as there is no double recovery with respect to the underlying unpaid wages owed for the same hours worked.  *See Jin v. Pacific Buffet House, Inc.*, No. 06-CV-579, 2009 WL

---

[12]As a result of an amendment which became effective on April 9, 2011, liquidated damages under the NYLL are now fixed at 100% of total unpaid wages.  N.Y. Lab. Law § 198(1-a).

2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (limiting recovery of FLSA liquidated damages);

*Perez v. Jasper Trading, Inc.*, No. 05-CV-1725, 2007 WL 4441062, at *6-7 (E.D.N.Y. Dec. 17,

2007) (same); *Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 313483, at *28-29

(S.D.N.Y. Feb. 1, 2007); *Jenna Lane*, 30 F. Supp. 2d at 625 (distinguishing between FLSA and

NYLL liquidated damages); *cf. Saigon Grill*, 595 F. Supp. 2d at 261-62 (awarding liquidated

damages under the FLSA and the NYLL because they "serve different purposes").  Although

liquidated damages have been awarded under both statutes for the same wages and hours

worked in some circumstances, *see Saigon Grill*, 595 F. Supp. 2d at 261-62, in most situations

where courts have awarded liquidated damages under both the FLSA and the NYLL, the

state law liquidated damages awards were made for those items of recovery available only

under the New York Labor Law, such as spread-of-hours pay, wages outside the FLSA

statute of limitations,[13] or uniform or bicycle expenses.  *See, e.g.*, *Ting Yao*, 2009 WL 289653,

at *7; *Chan*, 2007 WL 313483, at *28-29 (awarding NYLL liquidated damages only for

amounts awarded under the NYLL beyond the separate FLSA recovery).  Given these

considerations, the court bases the recommendations for the awards of damages below on

the following principle:  For unpaid overtime wages to which Rivera is entitled in the

previous two years, recovery should be had under the FLSA, which will provide him with a

double recovery as liquidated damages, as opposed to the 25% to which he would be entitled

under the New York Labor Law (if he could prove willfulness).

---

[13]For FLSA claims, awards may be made for unpaid wages up to two years (three years if the
violation was willful) before an action is filed, while the NYLL permits recovery of unpaid wages for
up to the preceding six years.  *Compare* 29 U.S.C. § 255(a) *with* N.Y. Labor Law § 198(3).

2.  <u>Proof and Calculation of Damages for Unpaid Wages</u>

Where an employer in an FLSA action fails to contest the assertions made by the

plaintiff, the recollections of the employees are presumed to be accurate.  *See Ting Yao*, 2009

WL 289653, at *3; *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

The Supreme Court has held that,

> an employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if he produces
> sufficient evidence to show the amount and extent of that work as a matter of
> just and reasonable inference.  The burden then shifts to the employer to come
> forward with evidence of the precise amount of work performed or with
> evidence to negative the reasonableness of the inference to be drawn from the
> employer's evidence.  If the employer fails to produce such evidence, the court
> may then award damages to the employee, even though the result may be only
> approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *accord Reich*, 121 F.3d at 66.

Rivera's uncontested recollections, contained in an affidavit, set forth the average number of

overtime hours he worked over the relevant periods, and the compensation he has already

received for those services.  Under the framework set forth by the Supreme Court and the

Second Circuit, the plaintiff's affidavit is sufficient to establish his claims and damages as set

forth below.

With respect to the value of the apartment and utilities to add to Rivera's cash wage,

the FLSA, the Code of Federal Regulations, and case law direct courts to use the "reasonable

costs" to the employer of furnishing such accommodations.  *See* 29 U.S.C. § 203(m); *Brock*,

332 F. Supp. 2d at 1325-27; *Estanislau*, 316 F. Supp. 2d at 108-09; 29 C.F.R. § 531.37(b).  The

C.F.R. makes clear that "reasonable cost may not exceed the employer's "actual cost" of

furnishing accommodations to the employee.  29 C.F.R. § 531.3; *see also Brock*, 332 F. Supp. 2d at 1325-27; *Estanislau*, 316 F. Supp. 2d at 108-09.  As to the "reasonable cost" to the employer, the Code also sets out that the "fair value" of the facilities may be used "in lieu of the actual measure of the cost of such facilities in ascertaining the 'wages' paid to any employee." 29 C.F.R. § 531.33(a).  "Where actual costs exceed the fair rental value of the lodging, the fair rental value will be used as the reasonable cost." *Brock*, 332 F. Supp. 2d at 1325.

    This discussion is shaped by the fact that most often, it is the defendant-employer who is asking the court to include the value of the lodging in the employee's wage.  The Code thus places a burden on the employer to prove reasonable or actual cost by maintaining records regarding the reasonable or actual cost of providing lodging to an employee.  29 C.F.R.§ 516.27(a).  Indeed, courts have routinely not allowed defendant employers to claim a "credit" for providing lodging if they failed to keep the requisite documentation. *See, e.g.*, *Brock*, 332 F. Supp. 2d at 1326-27 (citing cases).  The situation here, however, is flipped.  Since Rivera is the one seeking the "credit" for lodging, the rationale for having him prove "reasonable cost" does not hold.  Rather, in such circumstances, it is more sensible to use the value of the lodgings furnished. *See Estanislau*, 316 F. Supp. 2d at 108.  This is in keeping with the FLSA's practice of placing affirmative obligations on the *employer*, not the employee.  In addition, many employees may not possess the knowledge to prove the employer's reasonable costs, and this is especially true in a case like this one where the defendants' default has deprived the employee of the ability to conduct discovery.  It would be

unreasonable to penalize the employee for the sin of not knowing the costs to the employer. Lastly, since it was the employee who received the benefit of the lodging as compensation *to him*, the value the court adopts should reflect its value *to him* rather than the subsidiary consideration of costs to the employer. For all of these reasons, even though Rivera has not shown the "reasonable costs" to Essex and La Cabana, the court should use the value he asserts he received in the form of a "rent-rebate," $1,575.00 ($1,500.00 for the apartment and $75.00 for utilities).

As stated previously, Rivera is entitled to the difference between what he was actually paid in overtime wages, and what he was entitled to in overtime wages. That figure will be determined according to the following calculations, also summarized in a table below. Rivera claims entitlement to a wage for an average of 15 overtime hours per week over a two-year period. First, the value of the apartment rental was $1,500.00 per month. *See* Rivera Aff. ¶ 13. Rivera also received an average of $75.00 a month for utilities. *Id.* ¶ 14. Therefore, over one year, he received an additional $18,900.00 ($1,575.00 per month x 12 months) in wages through lodging and utilities. When that figure is divided by 52 weeks, Rivera was earning an additional $363.46 per week in lodging accommodations. That figure is added to Rivera's regular wage of $800.00 (40 hours x $20.00 per hour) per week, and the result is a regular weekly wage of $1,163.46. When that is divided by 40 hours, the result is an hourly rate of $29.09 per hour. Thus, while Rivera actually earned $30.75 per hour in overtime pay, see Rivera Aff. ¶ 12, he should have earned $43.64 ($29.09 x 1.5) an hour in overtime pay. The difference between his actual overtime rate and the one which he should have received is

thus $12.89 per hour.  He was therefore entitled to an additional $193.35 ($12.89 x 15) for every week in which he worked 15 overtime hours beyond 40 per week.  Since, according to Rivera's affidavit, he worked an average of 55 hours per week for the preceding two years prior to filing this lawsuit, he is entitled to $20,108.40 ($193.35 per week x 104 weeks) in unpaid overtime wages.  Under the FLSA's liquidated damages provision, because the defendants' have not come forward with any evidence of a good-faith failure to pay the proper overtime wage, Rivera is entitled to an additional $20,108.40 in liquidated damages.[14] 29 U.S.C. § 216(b).

|  | Straight-time | Overtime | |
|---|---|---|---|
| **Actual Rate** | $20.00/hr x 40 hours = $800.00 per week | $30.75/hr x 15 hours = $461.25 per week | |
| **Correct Rate (with lodging & utilities)** | $29.09/hr x 40 hours = $1,163.46 per week | $43.64/hr x 15 hours =  $654.60 per week | |
| **Difference** | $363.46 per week = $1,575.00 per month x 12 months ÷ 52 weeks | $12.89/hr x 15 hours =  **$193.35 per week** | **Total = $20,108.40** (104 weeks) |

### B.    ATTORNEY'S FEES AND COSTS

The plaintiff also seeks an award for attorney's fees and costs.  The FLSA requires an award of reasonable attorney's fees and costs to prevailing plaintiffs.  29 U.S.C. § 216 (b).  To

---

[14] Because Rivera should receive liquidated damages under the FLSA, there is no need to award the pre-judgment interest to which he would have been entitled if recovery was had under the NYLL.

aid the court in determining the amount of reasonable attorney's fees, the plaintiff is required to submit evidence that provides a factual basis for a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 433-434 (1983).  In this Circuit, that entails submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work performed, for each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983).  Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See Luciano*, 109 F.3d at 115; *Carey*, 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, No. 02-CV-5526,  2005 WL 2436194, at *3-4 (E.D.N.Y. Aug. 12, 2005).  In addition, the court may exclude hours from the calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003) (citing *Hensley,* 461 U.S. at 434; *Luciano,* 109 F.3d at 116); *see also Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), *amending* 493 F.3d 110 (2d Cir. 2007) (establishing the framework for awarding reasonable attorney's fees in this Circuit by determining a "presumptively reasonable fee").

Using the above data, the court is then charged with deciding the "presumptively reasonable fee" for the work performed in the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).[15]

---

[15]Although the Second Circuit has in the past questioned the use of the term, this "presumptively reasonable fee" is commonly called the "lodestar." *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117 (2d Cir. 2007) ("The meaning of the term "lodestar" has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness. This opinion abandons its use."), *amended as to other matters*, 522 F.3d 182 (2d Cir. 2008).  More recently, the Second Circuit has returned to use of the term, prodded undoubtedly by

Using its considerable discretion, the court is supposed "to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.*, 522 F.3d at 190 (emphasis in original); *accord, McDaniel v. County of Schenectady, et al.,* 595 F.3d 411, 420 (2d Cir. 2010). In determining this "reasonable hourly rate" the court is to be guided by what a paying client would be willing to pay, keeping in mind that a reasonable paying client would wish "to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. The court then calculates the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The plaintiff's attorney has submitted a detailed statement listing the tasks undertaken in the litigation, as well as the dates and time expended on those tasks. *See* Plaintiff's Petition for Attorney Fees and Costs, Ex. A [DE 23]. Although it appears to be an extract from time records, and not the time records themselves, the statement is detailed and provides the necessary information for judging the reasonableness of the attorney's efforts. Moreover, the sequence of the tasks undertaken and the time expended on the various tasks accord with what the court would expect. The court thus concludes that the statement is a reliable basis for making a fee award.

---

the Supreme Court's recent endorsement of it. *See Millea v. Metro-North R.R. Co.*, __ F.3d __, 2011 WL 3437513, at *8 (2d Cir. 2011) (*citing Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 130 S.Ct. 1662, 1673 (2010). The Circuit's return to the term notwithstanding, the method for calculating the lodestar in this Circuit has shifted with respect to the determination of the reasonable hourly rate, the focus now being on what a client would be willing to pay instead of what an attorney is willing to charge.

The statement lists a total of 28.61 hours expended on the various tasks undertaken, and the court's review of the tasks and hours finds no excess.  Accordingly compensation for all of the hours should be awarded.  The attorney seeks payment at the rate of $300 per hour which the court finds to be high for this type of case.  The case presented no novel issues as is demonstrated by the brevity of the plaintiff's memorandum of law and the ready support in the statutes, regulations and jurisprudence cited.  Accordingly, the court finds that the rate that a reasonable buyer of services of the nature provided here would pay is $250 per hour.  Accordingly, an award of attorney's fees in the total amount of $7,152.50 (28.61 x $250) is recommended.

The attorney's statement also provides a listing of the expenses incurred, which total $636.78.  In addition to a filing fee of $350 and a fee of $215 for service of process, the costs include modest charges for copying expenses, postage and local travel, all of which should be reimbursed.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby

**RECOMMENDS** that a judgment should be entered in favor of Rivera against the defendants, awarding him $20,108.40 in unpaid overtime wages, $20,108.40 in liquidated damages, $7,152.50 in attorney's fees, and $636.78 in costs.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within

-20-

the specified time waives the right to appeal any judgment or order entered by the District

Court in reliance on this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985);

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*,

968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human*

*Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

        **Counsel for the plaintiffs shall serve a copy of this Report and**

**Recommendation on the defendants by regular mail and file proof of such service in**

**the record.**

                                                    Respectfully submitted,

                                        *Viktor V. Pohorelsky*

                                        VIKTOR V. POHORELSKY
                                        United States Magistrate Judge

Dated:        Brooklyn, New York
                September 1, 2011